UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIT EDWARD CAPLAN,

      Plaintiff,

v.                                 Case No:  6:15-cv-1926-Orl-CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff Brit Edward Caplan appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the decision of the Commissioner is supported by substantial evidence, and Plaintiff has not shown any reversible error, the decision will be affirmed.

### I.    Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly weighed and considered the opinions of Plaintiff's treating physicians in determining Plaintiff's mental residual functional capacity ("RFC"); (2) whether the ALJ failed to properly include in his hypothetical question to the

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Vocational Expert ("VE") all of Plaintiff's mental limitations.

## II.   Procedural History and Summary of the ALJ Decision

On March 19, 2010, Plaintiff filed an application for a period of disability and DIB and protectively filed an application for SSI.   Tr. 139-44.   Plaintiff alleged a disability onset date of September 16, 2008 due to traumatic brain injury, fractured hip, and mental issues.   Tr. 139, 141, 160, 203.   The Commissioner denied these applications initially and upon reconsideration.   Tr. 67-74.   Plaintiff requested and received a hearing, which was held before ALJ Pamela Houston on March 4, 2011. Tr. 37-62, 95.   Plaintiff was represented by counsel during the hearing.   Tr. 37. Plaintiff, his father, and a VE testified at this hearing.   Tr. 38.

On March 31, 2011, the ALJ issued a decision finding Plaintiff not disabled from September 16, 2008 through the date of the decision.   Tr. 17-30.   Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied.   Tr. 1-5.   Plaintiff appealed the Commissioner's decision to the United States District Court, Middle District of Florida, which remanded the case on January 21, 2014 for further administrative proceedings.   Tr. 704-06, 711. Subsequently, the Appeals Council vacated the final decision of the Commissioner and remanded the matter to ALJ Houston for further proceedings consistent with the court's remand order.   Tr. 711.

Pursuant to the Commissioner's remand, ALJ Houston held a hearing on September 14, 2014.   Tr. 622-63.   Plaintiff, his father, and VE Howard S. Feldman

testified at the hearing. Tr. 623. Plaintiff was represented by counsel at the hearing. Tr. 622.

The ALJ issued an unfavorable decision on November 25, 2014. Tr. 598-613. At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, and had not engaged in substantial gainful activity since September 16, 2008, the alleged onset date. Tr. 600. At step two, the ALJ determined that Plaintiff has the following severe impairments: status post multiple trauma including traumatic brain injury secondary to automobile accident; mood disorder; history of polysubstance abuse; and concentration problems. Tr. 601. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ then determined that Plaintiff

> has the [RFC] to perform light work[2] . . . except no more than occasional stooping, kneeling, crouching, crawling, and climbing, but never climbing ladders, ropes, and scaffolds. [Plaintiff] should avoid overhead lifting, lifting from ground level, concentrated exposure to temperature extremes, work at heights, work with dangerous machinery and dangerous tools, and constant direct contact with vibration. [Plaintiff] is limited to tasks that are simple 1 to 5 steps that can be learned and

---

[2] The regulations define light work as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

> performed independently after 30 days of training. He should be able to perform these tasks at his own workstation or in his own work area with no interaction with general public and no more than occasional interaction with co-workers and supervisors.

Tr. 603.   Next, utilizing the services of a VE, the ALJ found that based on Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely the occupations of mail clerk, factory packager, and bench assembler.   Tr. 611-12.   The ALJ, therefore, concluded that Plaintiff has not been under a disability from September 16, 2008 through the date of the decision.   Tr. 613.

On September 9, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   Tr. 579-82.   Accordingly, the ALJ's November 25, 2014 decision is the final decision of the Commissioner.   Plaintiff filed a Complaint in this Court on November 13, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 14, 17.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."

*Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### a.   *Whether the ALJ properly evaluated the opinion of Plaintiff's treating physicians*

Plaintiff argues that the ALJ erred in failing to weigh and adequately consider the opinions of Plaintiff's treating physicians, and failing to adequately and accurately consider all of the pertinent medical evidence supporting Plaintiff's limitations.   Doc. 20 at 11.   Specifically, Plaintiff contends the ALJ failed to weigh the opinion of Plaintiff's treating facility, Tri County Psychiatric Associates ("Tri County"); failed to weigh the opinion of Valarie Masten Hoese, Ph.D., a psychologist

who examined Plaintiff twice; and improperly weighed and mischaracterized the opinion of Rebecca C. Villar, PsyD.   *Id.* at 12-21.   The Commissioner responds that substantial evidence supports the ALJ's determination of Plaintiff's mental RFC, and remand is not warranted for the ALJ to state the weight she assigned to opinions that did not contradict her RFC determination.   Doc. 21 at 4-18.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p; *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."   *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

> *i.    Whether the ALJ failed to weigh the opinion of Plaintiff's treating facility, Tri County*

Plaintiff contends that the ALJ "failed to weigh the opinion of [Plaintiff's] treating facility, TriCare [sic] Psychiatric Associates, Dr. Sofia Qadir."   Doc. 20 at 12.   The Commissioner asserts that Dr. Qadir was not a treating source whose opinion is entitled to any special deference or consideration because Plaintiff presented to her only once.   Doc. 21 at 13.   As for Plaintiff's other appointments at Tri County, the Commissioner argues that Plaintiff presented to advanced nurse practitioner, Carol Sevlie, MSN, ARNP, who is not an acceptable medical source and whose opinion was not a "medical opinion."   *Id.*   In any event, the Commissioner further argues, the ALJ clearly considered Dr. Qadir's note and the remaining Tri County records, and the ALJ's finding is not inconsistent with the records.   *Id.* at 13-14.

The regulations define a treating source as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the [claimant]."   20 C.F.R. §§ 404.1502, 416.902.   A doctor who examines a claimant only once is not a treating source.

*Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)); see also *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1303 (S.D. Fla. 2012) (holding that a doctor who saw claimant only twice did not have an ongoing treatment relationship and was not a treating source).

Additionally, the regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Treatment notes from acceptable medical sources that include a description of the claimant's symptoms, a diagnosis, and a judgment about the severity of his impairments are medical opinions. *Winschel*, 631 F.3d at 1178-79.

Plaintiff presented to Tri County from October 20, 2009 through February 2011. Tr. 508-21, 546-60, 570-78. During that time, Plaintiff met with Dr. Qadir only once, on April 5, 2010. Tr. 514-15. Plaintiff reported to Dr. Qadir that he had problems with anxiety and depression. Tr. 514. He further indicated that he was having problems with concentration, lack of energy, and lack of motivation; however, he stated that his thoughts were coherent and logical. *Id.* Plaintiff denied suicidal thoughts since a previous overdose in 2009. *Id.* Dr. Qadir's impression was that Plaintiff "feels moody and irritable." *Id.* She diagnosed Plaintiff with a mood disorder not otherwise specified ("NOS") and referred Plaintiff for therapy. *Id.* Dr.

Qadir also advised Plaintiff to exercise regularly and increase fluid intake.   *Id*.

Having seen Plaintiff only once, Dr. Qadir was not a treating source.   Even if Dr. Qadir was considered a treating source, her treatment note does not contain any statements that reflect her judgment about the severity of Plaintiff's impairments and what Plaintiff can still do despite his impairments.   Accordingly, although the ALJ was required to consider it, the ALJ was not required to give controlling weight to Dr. Qadir's treatment note.   Here, the ALJ specifically cited the exhibit containing Dr. Qadir's treatment note and stated in her opinion that Plaintiff "was diagnosed with a mood disorder" and that Plaintiff "is noted to have issues with motivation and effort."   Tr. 604.

As for Plaintiff's visits with ARNP Sevlie at Tri County, the Commissioner correctly notes that the ALJ was not required to give any controlling weight to those treatment records.   Only "acceptable medical sources" can give medical opinions and can be considered treating sources whose medical opinions may be entitled to controlling weight.   SSR 06-03p, 2006 WL 2329939, at * 2; 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Licensed physicians and psychologists are acceptable medical sources whereas nurse practitioners are not.   SSR 06-03p, 2006 WL 2329939, at * 2; 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d).   Therefore, the ALJ was not required to assign any controlling weight to ARNP Sevlie's treatment notes.

Additionally, ARNP Sevlie did not opine upon the severity of Plaintiff's impairments, the extent to which Plaintiff's impairments impaired his ability to function, what Plaintiff could do despite any impairments, or any mental restrictions.

For instance, Plaintiff presented to ARNP Sevlie on October 20, 2009.   Tr. 519.
ARNP Sevlie noted that Plaintiff was in South Seminole Hospital the previous month
due to a suicide attempt when he tried to overdose on Roxycodone.   *Id.*   Plaintiff's
mental status exam showed he was alert and oriented to time, place and person.   Tr.
520.   His speech was normal.   *Id.*   Plaintiff's mood was angry; his affect was over
friendly, but then irritable.   *Id.*   Plaintiff had a fair memory, with "some slight
impairments noted," and his insight and judgment were fair.   *Id.*   Plaintiff denied
homicidal and suicidal thoughts.   *Id.*   ANRP Sevlie diagnosed Plaintiff with a mood
disorder, NOS secondary to closed head injury; attention deficit hyperactivity
disorder ("ADHD") by history; and polysubstance abuse.   Tr. 521.

Plaintiff returned to Tri County on October 30, 2009, and complained of severe
anxiety.   Tr. 518.   ARNP Sevlie noted Plaintiff's concentration was fair and his
thoughts were clear.   *Id.*   Plaintiff's mood was anxious.   *Id.*   His insight and
judgment were fair, but limited secondary to a closed head injury.   *Id.*   His diagnosis
remained the same.   *Id.*   The following month, on November 20, 2009, Plaintiff
returned to Tri County and saw ARNP Sevlie again.   Tr. 517.   Plaintiff informed
ARNP Sevlie that he would be starting a job installing security cameras.   *Id.*   He
reported he still was having anxiety as of this visit.   *Id.*   During this visit, ARNP
Sevlie noted Plaintiff had a good appearance and orientation, but Plaintiff reported
he was having poor sleep.   *Id.*   His diagnosis remained the same.   *Id.*   Plaintiff's
next visit to Tri County was on February 9, 2010 when he saw ARNP Sevlie again.
Tr. 516.   Plaintiff reported that his hours at work were decreased because there was

no work. *Id.* Plaintiff's speech and motor abilities were within normal limits. *Id.* His concentration, judgment, and insight were fair. *Id.* He was focused and attentive. *Id.* Plaintiff's mood was anxious, and he again reported poor sleep. *Id.* Plaintiff's diagnosis was mood disorder NOS and polysubstance abuse. *Id.* These are the extent of ARNP Sevlie's treatment notes, and Plaintiff has not shown how any of ARNP Sevlie's records contradict the ALJ's RFC determination or provide for greater limitations than those determined in the RFC.

As for Plaintiff's remaining visits to Tri County, it appears he met with another physician there because the signatures on the treatment records do not match those of ARNP Sevlie or Dr. Qadir. *See* Tr. 511-13, 547-50, 570-60. The remaining records show that on May 6, 2010, Plaintiff reported he had lost his job because of lack of work. Tr. 512. Otherwise, there was no change in Plaintiff's problems, mental status, diagnosis, or medication from his previous visit. *Id.* On June 3, 2010, Plaintiff returned and reported that his medication was not helping with his sleep. Tr. 550. Overall, though, Plaintiff was "doing pretty good," he was compliant with his medications, and he was "medically stable." *Id.* On July 1, 2010, Plaintiff requested an increase in his medication to help with his sleep, mood and anxiety. Tr. 549. Thus, Plaintiff's Abilify medication was increased. *Id.*

The next two records from Tri County appear to be misdated as December 21, 1981. Tr. 547-48. On the first of those visits, Plaintiff reported that he was feeling a little more irritable. Tr. 548. He reported an increase in appetite, that he gained five pounds, and that he was watching his diet and exercise. *Id.* He reported he

was looking for work. *Id.* Plaintiff's medication was adjusted, and his diagnoses remained mood disorder NOS and ADHD. *Id.* On the next visit, he had gained about eight pounds since he had begun using Abilify. Tr. 547. Thus, Plaintiff requested to discontinue Abilify, but admitted that it had helped with his mood, anger, and irritability. *Id.* Plaintiff reported he was still exploring his job options at this time. *Id.* During this visit, Plaintiff's diagnosis remained the same. His medication was adjusted to stop Abilify and start Prozac. *Id.*

On September 23, 2010, Plaintiff returned to Tri County and reported that he had gotten a job, was working thirty-one hours per week, and that it was going well. Tr. 571. Plaintiff was medically stable. *Id.* Plaintiff's diagnosis and medications remained the same. *Id.* Similarly, treatment records through December 16, 2010, indicate that Plaintiff was doing well and working. His diagnosis and medications remained the same. Tr. 572-74. On January 13, 2010, Plaintiff reported that he was fired for being forgetful, not skilled enough, or lacked proper work performance. Tr. 575. Otherwise, there was no change in Plaintiff's mental status. *Id.* The following month, on February 10, 2011, Plaintiff reported that his medications were "working good," he was having better sleep, his appetite was fair, there was no change in his mental status, and that he had clear thoughts but anxious mood. Tr. 576. Plaintiff also reported that he was looking for a job. *Id.*

Regarding these records, the Court finds any error in failing to explicitly state the weight given to them was harmless because the ALJ clearly considered and gave weight to them. *See e.g., Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th

Cir. 2015); *Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010).   There is no "rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection" that leaves this Court with insufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole.   *Dyer,* 395 F.3d at 1211.   Here, although the ALJ did not explicitly state the weight she accorded these, the ALJ made positive references to them in her opinion.   In her RFC determination, the ALJ cited these records with approval in evaluating other evidence as follows:

> Pertaining to his limitations, the claimant testified to being able to sit for about 15 minutes and then has to get up and stretch because his back pain. He indicated that standing results in back pain and walking results in knee locking up. Yet, medical records indicate that he is medically stable (see Ex. 21F).
>
> . . .
>
> Jane Hyche, owner of Universal Distributing and Vending, wrote that Brit Caplan was employed from September 28, 2010 until December 23, 2010. During that time, Ms. Hyche repeatedly had to explain how to do specific tasks because he was reportedly unable to retain the directions. . . . Ms. Hyche indicated that she had to terminate his position (Ex. 25E). In response to this letter, the undersigned points to medical records where the claimant had indicated the job was going well but he got fired in January of 2011 (see Ex. 21F).

Tr. 607, 609.   Additionally, these records do not support any greater limitations than those provided in the ALJ's RFC determination.   As noted earlier in the opinion, the ALJ determined that Plaintiff is "limited to tasks that are simple 1 to 5 steps that can be learned and performed independently after 30 days of training. He should be able to perform these tasks . . . with no interaction with general public and no more than occasional interaction with co-workers."   Tr. 603.   The Tri County records

simply do not warrant a conclusion of any more limitations than those determined by the ALJ.

>        *ii.*        *Whether the ALJ failed to weigh the opinion of Dr. Hoese*

Plaintiff next argues that the ALJ erred in stating she considered Dr. Hoese's opinion but failing to weigh it.   Doc. 20 at 14-15.   Plaintiff also contends that the ALJ did not properly characterize Dr. Hoese's records.   *Id.*   The Commissioner again responds that Dr. Hoese's findings do not support Plaintiff's contention that he was disabled due to a health condition nor do they contradict the ALJ's RFC determination.   Doc. 21 at 16.   The Court agrees with the Commissioner as to this issue.

Dr. Hoese examined Plaintiff and performed psychological testing on January 4 and 18, 2010.   Tr. 854-63.   Dr. Hoese opined that Plaintiff demonstrated "motivational deficits and/or poor effort," "some intent to misrepresent functioning," and that Plaintiff was oppositional during the testing process, which resulted in difficulty in interpreting his low test scores.   Tr. 854, 859.   Nevertheless, Dr. Hoese opined that Plaintiff's reduced motivation and effort did not preclude the possibility of genuine neuropsychological impairment.   Tr. 854.   Dr. Hoese opined there was evidence of impairment in attention and concentration, and noted a report of possible premorbid ADHD, but declined to comment in light of the "very limited prior history available."   *Id.*   Dr. Hoese opined that Plaintiff demonstrated moderate impairment in the ability to "switch set and mental flexibility" and low-average academic achievement.   *Id.*   She also stated that Plaintiff had a below-expected performance

on verbal measures of learning and memory, which she could not fully interpret.   Tr. 854.

Dr. Hoese further opined that Plaintiff had premorbid social and personality issues, mood disorder, and polysubstance abuse; and his preexisting difficulties with attention and concentration, impulse control and judgment were probably worsened by his 2008 traumatic brain injury.   Tr. 854.   She opined that the present findings called into question Plaintiff's ability to be fully successful in a vocational setting and, if Plaintiff did have difficulties in a vocational setting, he might be eligible for vocational rehabilitation services.   Tr. 854-55.   She added that "[c]onsideration might be given to Social Security benefits" and noted her understanding that Plaintiff already had applied.   Tr. 855.   Dr. Hoese recommended psychotherapy, cognitive rehabilitation, ongoing treatment for substance use, and neuropsychological assessment in a year to document Plaintiff's pattern of performance.   Tr. 855.

In discussing Dr. Hoese's opinion, the ALJ noted that Dr. Hoese met with Plaintiff twice, reviewed some of his records, and found that Plaintiff had some social and personality issues, mood disorder, and polysubstance abuse.   Tr. 606.   The ALJ discussed Dr. Hoese's note that Plaintiff had sustained a traumatic brain injury with probable worsening of some of his preexisting difficulties in concentration, impulse control, and judgment.   *Id.*   The ALJ also noted Dr. Hoese's opinion that Plaintiff's findings called into question his ability to be successful in a vocational setting.   *Id.* The ALJ then stated,

> [t]he undersigned considered Dr. Hoese's opinion and notes that it
> should be pointed out that the psychologist found the claimant's

> performance to be "quite weak" and could not be fully corroborated. Dr. Hoese found the claimant to have weak motivation and poor effort that resulted in low scores. Further, the undersigned points out that Dr. Hoese did not make a mental health diagnosis after examining the claimant.

Tr. 606.

As to the ALJ's failure to explicitly weigh Dr. Hoese's opinion, Plaintiff contends this is error.   Doc. 20 at 13.   As to the ALJ's characterizations of Dr. Hoese's opinion, Plaintiff contends the ALJ erred because other statements in Dr. Hoese's opinion make the ALJ's characterization "not exactly accurate."   *Id.* at 4.

First, Plaintiff's contention that the ALJ erred by not providing a complete recitation of Dr. Hoese's records thereby making her summary of these records "not exactly accurate" is unavailing.   As noted, the ALJ need not "specifically refer to every piece of evidence in his decision," so long as the decision is not a "broad rejection" that leaves the Court with insufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole.   *Dyer*, 395 F.3d at 1210.   The ALJ's decision provides sufficient information to enable the Court to conclude that she did not broadly reject Dr. Hoese's records but merely summarized them. Moreover, while these records indicate that Dr. Hoese's findings call into question Plaintiff's ability to be successful in a vocational setting, they do not show greater limitations than those determined by the ALJ's RFC.   Because the ALJ expressly considered the opinion of Dr. Hoese, because her opinion did not contradict the ALJ's findings, and because the Court is able to conclude from the ALJ's decision that she did not broadly reject this opinion but rather considered Plaintiff's medical condition

as a whole, any error to explicitly state the weight to it is harmless.   The ALJ's clear discussion of Plaintiff's medical records supported by substantial evidence distinguishes this case from *Winschel*, in which the Eleventh Circuit ordered the ALJ to consider and explain the weight accorded to the medical opinions because the ALJ did not mention the treating physicians' medical opinions or discuss pertinent elements of the examining physicians' medical opinions.   *Winschel*, 631 F.3d at 1179. Thus, to the extent that ALJ did not specify the weight accorded to Dr. Hoese's opinion, the error was harmless.   *See Laurey* 632 F. App'x at 987; *Shaw*, 392 F. App'x at 687; *See also Tillman v. Comm'r, Soc. Sec. Adm.*, 559 F. App'x 975, 975 (11th Cir. 2014) ("Ordinarily, an ALJ's failure to explain the particular weight given to the different medical opinions provided is reversible error. However, when the ALJ's error did not affect its ultimate findings, the error is harmless.").

> ### iii.   *Whether the ALJ erred in giving little weight to Dr. Villar's opinion*

Similar to his previous arguments, Plaintiff faults the ALJ for not providing a complete recitation of Dr. Villar's opinion, and contends that the ALJ failed to provide "a complete accurate characterization of the evidence."   Doc. 20 at 15-60.   Having reviewed Dr. Villar's records, the ALJ's decision, and remaining records, the Court likewise finds this argument unavailing.

On May 28, 2014, Dr. Villar opined that Plaintiff is "totally and permanently disabled from any type of full-time or part time gainful employment" and that "he will likely require long-term and intensive psychological intervention and cognitive rehabilitation."   Tr. 872.   Dr. Villar arrived at these conclusions after a full

neuropsychological evaluation of Plaintiff on June 15, 2013 and five sessions of cognitive retraining between March 2014 and April 2014.  *Id.*  The ALJ gave Dr. Villar's opinion little weight because "Dr. Villar's treatment records are not consistent with the opinion rendered that [Plaintiff] is totally and permanently disabled."  Tr. 604-05.  Based on the legal standard set forth, *supra*, the ALJ did not err in weighing Dr. Villar's opinion, and substantial evidence supports her decision to do so.

At Plaintiff's neuropsychological evaluation in June 2013, Plaintiff was sarcastic at times and had a negative attitude towards the interview process.  Tr. 842.  He was alert, fully oriented, and attentive.  *Id.*  His speech was logical, goal oriented, and prosodic.  *Id.*  He apologized at times for his tone of voice or sarcastic comments.  *Id.*  Rapport with Plaintiff was easily established and maintained.  *Id.* His cognitive and emotional insights were judged to be good, while his interpersonal reasoning, judgment, and planning were judged to be fair to poor.  *Id.*  Plaintiff maintained appropriate eye contact and was friendly and talkative with the examiner.  *Id.*  Although he was observed to become frustrated with difficult tasks, he persevered and completed all measures during the eight-hour appointment.  *Id.*

Plaintiff's test results revealed that the following abilities fell within the average range: intellectual functioning, reading comprehension and writing, mental arithmetic, working memory, immediate recall and verbal working memory, ability to follow increasingly complicated verbal commands, expressive vocabulary and general fund of knowledge, ability to recall short stories immediately and after a long delay interval, mental flexibility involving the ability to learn from his experience,

ability to maintain and shift his cognitive set as needed, verbal and visual-spatial abstract reasoning abilities, and knowledge of societal norms and social reasoning. Tr. 843-45.   On the other hand, the following abilities fell within the low average range: calculation, visual motor processing, auditory working memory for solving mathematical problems, verbal fluency by both letter and category, and overall auditory memory.   *Id.*   Plaintiff had borderline impaired abilities in: confrontational naming, learning a sixteen-word list over five trials, and short and long delayed free recall.   *Id.*

Dr. Villar noted that Plaintiff's ADHD in both childhood and adulthood fell under the borderline symptomatic range.   Plaintiff, however, rated himself as having no difficulty related to current impulsivity or childhood hyperactivity and impulsivity.   Doc. 845.   Dr. Villar further opined that Plaintiff is pragmatic, shrewd, competitive, and independent, that he has difficulty communicating effectively at times, but that his social supports and level of stressors are average.   Tr. 845. Plaintiff reported that since his 2008 accident, he experienced behavioral and emotional changes in verbal temper outbursts, apathy, irritability, frustration, impatience, and difficulty with interpersonal functioning.   Tr. 846.   Dr. Villar noted that these changes are consistent with personality change due to head trauma, combined type.   *Id.*   Dr. Villar also opined that Plaintiff's drug abuse was consistent with a diagnosis of polysubstance dependence (in full sustained remission), and that Plaintiff demonstrates antisocial and schizoid personality traits.   *Id.*   She further noted that Plaintiff may be a viable candidate for vocational rehabilitation services,

but he will likely require psychological intervention and cognitive remediation before being able to successfully enter the workforce. Tr. 847. She gave several recommendations, one of which was that "[t]reatment should also focus on assisting him in transitioning back into gainful employment." *Id.*

The following year, in Plaintiff's first precognitive training appointment on March 18, 2014, Dr. Villar noted that "[r]apport was easily established with Plaintiff." Tr. 880. At that time, Plaintiff stated that he has difficulty managing stress, and often approaches stress through avoidance or verbal temper outbursts. *Id.* In the next session, Plaintiff appeared to have some difficulty understanding the importance of modifying communication and behavior to maintain a positive work environment or relationships. Tr. 881. He at times spoke in a sarcastic manner, but frequently apologized for "being rude." *Id.* He maintained a good sense of humor throughout the session. *Id.*

Throughout the following session, Plaintiff's "communication was very positive in comparison to the previous sessions." Tr. 882. He made pleasant jokes, appeared receptive to feedback, and did not use sarcasm. *Id.* In the next session, on April 9, 2014, Plaintiff interacted positively throughout the session while he discussed his difficulty in interacting or working with others. Tr. 883. On April 21, 2014, Dr. Villar noted that Plaintiff "acted appropriately throughout the session and evidenced good impulse control when disagreeing on an issue." Tr. 884. Plaintiff relayed a sarcastic comment he made that was not taken well by a customer at his friend's business while Plaintiff was working there. *Id.* Dr. Villar reviewed with

Plaintiff the likelihood of interacting with others who do not necessarily appreciate sarcastic jokes and emphasized the importance of avoiding this style of communication.  *Id.*  Similarly, on August 5, 2014, Dr. Villar discussed with Plaintiff how his sarcastic sense of humor can negatively impact his interaction with others, which would likely cause him difficulty in a work situation.   Tr. 876.   As of August 18, 2014, Dr. Villar's treatment note states that Plaintiff was interacting appropriately and evidenced a strong sense of humor.   Tr. 874.

The above recitation of Dr. Villar's records supports the ALJ's determination that her records were inconsistent with her May 2014 conclusion that Plaintiff is totally and permanently disabled.   Indeed, both the records before and after Dr. Villar rendered her opinion that Plaintiff is totally disabled provide contradicting information.  *See* Tr. 872, 874, 876.   As the ALJ correctly noted, the records reflect Plaintiff's difficulty with being sarcastic, or having the unintended appearance of being rude to others.   Tr. 604.   But Plaintiff also demonstrated improvement, showing good impulse control.  *Id.*  Moreover, Dr. Villar's records from both the 2013 evaluation and Plaintiff's cognitive retraining sessions contemplate Plaintiff returning to work.   Tr. 847, 884.   For example, at his last session on April 21, 2014, Plaintiff reported that he had been helping a friend in his business "but he was unsure when he would be able to return to work" because he was caring for his mother who had recently been injured.   Tr. 884.   Additionally, although the records show some ongoing difficulties with communication, the ALJ accounted for this when she limited him to "simple tasks with no interaction with the public, and only occasionally

(1/3) with coworkers or supervisors.   This will allow [Plaintiff] to work individually at his own workstation, without unnecessary disturbances." Tr. 604.   Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p.   Although the ALJ was required to consider Dr. Villar's records, the ALJ was not required to give deference on Dr. Villar's opinion on total and permanent disability, as this issue is reserved to the Commissioner.

Upon a review of the record, the Court concludes that the ALJ did not err in reducing the weight he gave to Dr. Villar's opinion, as the record reflects good cause for doing so, and the ALJ articulated her reasons for doing so.   *See e.g.*, *Crawford*, 363 F.3d 1155; *Phillips*, 357 F.3d at 1241.   Here, it is clear that the ALJ considered the evidence, summarized it, and made a determination supported by substantial evidence, as further discussed below.

The RFC is the most that a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether

he can return to his past relevant work are considered in determining his RFC, *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ considered Plaintiff's testimony, his daily activities, his medical history, and medical source opinions.   Tr. 604-611.   The ALJ considered Plaintiff's testimony that he can cook, use a dishwasher, use a computer, navigate the internet, perform personal care, and drive.   Tr. 604, 607-08.   Plaintiff's function reports from November 2008 and May 2010 indicate that he was capable of performing daily tasks. He attended to his personal care, cared for a pet, prepared simple meals, cleaned his room, did laundry, drove, went out alone, shopped in stores, and managed money. Tr. 167, 169-72, 178, 180, 221-23, 229-31, 637, 640-41.   Although Plaintiff preferred to be independent, he spent time with others on a daily basis and reported no difficulties getting along with others.   Tr. 52-53, 170-72, 181-83, 226, 234, 637-38, 649.   He used the computer, watched television, played video games, and listened to music, and he denied difficulties with task completion, concentration, memory, and understanding or following instructions.   Tr. 171, 178, 181, 224, 232-33, 640, 650, 876.   In her decision, the ALJ's emphasized Plaintiff's activities of searching for jobs and playing video games.   Tr. 608.

In June 2010, state agency psychologist Nancy Hinkeldey, Ph.D. opined that Plaintiff can understand, retain, and carry out simple instructions.   Tr. 530, 544. She further opined that Plaintiff can consistently and usefully perform routine tasks

on a sustained basis, with minimal (normal) supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions. Tr. 530.   She opined that Plaintiff can adjust to mental demands of most new task settings.   *Id.*   The ALJ considered and assigned Dr. Hinkeldey's opinions weight, which she was permitted to do.   Tr. 606; *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e).   Thus, based on the foregoing discussion, the Court concludes that the ALJ's decision must be affirmed.   This additional evidence, in addition to the records discussed in this opinion, provide substantial evidence for the ALJ's decision.

> b.   *Whether the ALJ failed to properly include in his hypothetical question to the VE all of Plaintiff's limitations.*

Next, Plaintiff argues the ALJ's hypothetical questions to the VE did not properly reflect Plaintiff's limitations, and thus the ALJ erred in relying on the VE. Because the Court affirms the ALJ's RFC assessment above, it also will affirm the ALJ's choice of hypothetical based on that assessment. *See McGill v. Comm'r Soc. Sec.,* ---F. App'x --- 2017 WL 957186, at *3 (11th Cir. Mar. 13, 2017) (citing *Crawford*, 363 F.3d at 1161 for its holding that the "ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

## V.   Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 17th day of March, 2017.


CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record